IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARY HARRIMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 13-1435-JAR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Mary Harriman's applications for a period of disability and disability insurance benefits under Title II of the Social Security Act[1] and supplemental security income under Title XVI of the Social Security Act.[2] Upon review, the Court finds that the underlying decision is not supported by substantial evidence in the record, and thus reverses and remands the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

**I.    Procedural History**

On April 19, 2011, Plaintiff protectively filed applications for a period of disability and disability insurance benefits, and for supplemental security income, alleging disability beginning January 1, 2009. Her applications were denied initially and upon reconsideration. Plaintiff timely requested a hearing before an administrative law judge (ALJ). After a hearing, the ALJ

---

[1] 42 U.S.C. §§ 401–434.

[2] 42 U.S.C. § 1381 et seq.

1

issued a decision in July 2012 finding that Plaintiff was not disabled; in September 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Plaintiff then timely sought judicial review before this Court.

## II. Standard for Judicial Review

Judicial review under 42 U.S.C. § 1383(c)(3) is limited to whether the defendant's decision is supported by substantial evidence in the record as a whole and whether the defendant applied the correct legal standards.[3] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of the defendant.[5]

## III. Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[6] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[7] The Secretary has

---

[3] *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[4] *Id.* (quoting *Castellano*, 26 F.3d at 1028).

[5] *Id.*

[6] 42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[7] *Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

established a five-step sequential evaluation process to determine whether a claimant is disabled.[8] If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[9]

## IV.     Issue Presented

Plaintiff does not challenge the ALJ's determinations at steps one, two and three that: Plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 1, 2009; Plaintiff has medically severe impairments of degenerative disc disease, fibromyalgia, obesity, depression, and anxiety; and Plaintiff's impairments or combination of impairments do not meet or medically equal listings.

Rather, Plaintiff challenges the ALJ's determination at step four that Plaintiff has the residual functional capacity (RFC) to perform work at a range between the sedentary and light exertional levels. In making this determination, the ALJ expressly gave no weight to the opinions of Plaintiff's treating physician, Dr. Divina San Diego, who opined that Plaintiff's functional limitations were, *inter alia*,[10] that Plaintiff: could not sit, stand or walk for more than sixty minutes at a time or for more than four hours total in an eight-hour workday; would need unscheduled fifteen-minute breaks every two hours during an eight-hour workday; would likely miss work two times a month; and would need to shift at will from sitting, standing, or walking positions. Dr. San Diego further opined, *inter alia*,[11] that Plaintiff: would need to recline or lie

---

[8] 20 C.F.R. § 416.920(a); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

[9] *Id.*

[10] Dr. San Diego rendered these opinions in an RFC assessment she did on or about June 30, 2011.

[11] These opinions were rendered in a second RFC assessment Dr. San Diego did on or about July 6, 2012. This second RFC was not completed and submitted as part of the record considered by the ALJ, but it was considered by the Appeals Council.

3

down during an eight-hour workday in excess of the typical break schedules; could walk no more than one city block; could sit only thirty minutes at a time and for a total of no more than four hours of an eight-hour workday; could walk or stand for five minutes at a time and for no more than one hour total during an eight-hour workday; and would need to take unscheduled fifteen-minute breaks.

Plaintiff contends that the ALJ's RFC determination is the product of his improper evaluation of the opinions of her treating physician. The issue presented is thus whether the ALJ properly evaluated Dr. San Diego's opinion in determining to give her opinion no weight.

## V. Discussion

It is the responsibility of the ALJ to evaluate a claimant's "physical and mental RFC."[12] The RFC represents "the most that the claimant can still do despite her limitations, and must include all of the claimant's medically determinable impairments."[13] Social Security Ruling 96-8p[14] requires that the ALJ perform a function-by-function assessment of the claimant's functional limitations and expressly identify the functional limitations or restrictions that affect the claimant's work-related abilities.[15] The ALJ must consider all the relevant evidence, including the claimant's description of limitations, the medical evidence, and observations of

---

[12] *DeWitt v. Astrue*, 381 F. App'x 782, 784 (10th Cir. 2010) (quoting *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008)); SSR 96-8p, 1996 WL 374184, at *1–2 (July 2, 1996).

[13] *DeWitt*, 381 F. App'x at 784 (quotation marks and citations omitted).

[14] 1996 WL 374184 (July 2, 1996).

[15] *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (finding that where all of the functions that the ALJ specifically addressed in the RFC were those in which he found a limitation, a court can reasonably believe that those functions that he omitted were those that were not limited).

physicians and others.[16] The RFC is not based solely on medical evidence; rather, it is based on all credible evidence of record, including Plaintiff's medical history and treatment, objective evidence, and Plaintiff's daily activities.[17] Here, the ALJ acknowledged that he had considered all of the evidence in the record, expressly acknowledging consideration of Plaintiff's statements and testimony; medical records of examination, tests, diagnoses, treatments, and medications; Plaintiff's reports of daily activities; Plaintiff's earnings record; the opinions of Dr. San Diego and the state agency medical consultant, Dr. Goering; and a third-party report submitted by Plaintiff's husband. The ALJ also expressly acknowledged that he had "considered all of the symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence," referencing a number of sections of the Social Security Act and its regulations.

The ALJ expressly gave no weight to the opinions of Dr. San Diego, Plaintiff's treating physician. A treating source opinion may be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record; but if it is "deficient in either respect, it is not entitled to controlling weight."[18] The ALJ explained that Dr. San Diego's opinions were not supported by objective evidence and were inconsistent with other substantial evidence in the record. But where, as here, the ALJ decides to not give controlling weight to a treating physician's opinion, the ALJ must decide whether the opinion should be rejected altogether or assigned some lesser

---

[16]*See* 20 C.F.R. § 416.945.

[17]*See* 20 C.F.R. § 404.1545(a); SSR 96-8p

[18]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374184, at *5 (July 2, 1996)).

weight.[19] Treating source medical opinions that are not entitled to controlling weight must still be accorded deference and must still be evaluated in light of the factors set forth in the relevant regulations.[20]

In *Goatcher v. U.S. Dep't of Health & Human Services*,[21] the Tenth Circuit directed that the ALJ consider the following factors in determining what weight to give any medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[22]

As discussed below, this Court finds that the ALJ erred in concluding that Dr. San Diego's opinions were unsupported or inconsistent with other substantial evidence in the record and, based on the *Goatcher* factors, erred in assessing no weight to Dr. San Diego's opinions.

Before Dr. San Diego began treating Plaintiff, Plaintiff had been treated by Dr. Marcell and, upon referral, by Dr. Zhao, a neurologist since at least 2007. These doctors had treated Plaintiff with a series of epidural and nerve blocks, which provided only temporary pain relief. In July 2010, Plaintiff was referred to Dr. San Diego, specifically for pain management; and Dr.

---

[19]*Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013).

[20]*Id.* (citing 20 C.F.R. §§ 404.1527 and 416.927).

[21]52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6))

[22]*Id.* (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

San Diego then treated Plaintiff over the course of twenty-two months, from July 2010 to May 2012.  Contrary to the ALJ's finding that Plaintiff saw Dr. San Diego infrequently, Plaintiff saw Dr. San Diego eleven times during the twenty-two month treatment relationship, or about every other month.   Dr. San Diego routinely recorded Plaintiff's subjective complaints, physically examined Plaintiff, and prescribed various pain medications in various dosages.

To be sure, there is, as the ALJ found, objective medical evidence that is inconsistent with Dr. San Diego's opinions.  In April 2007, Dr. Zhao, a neurologist, characterized Plaintiff's lumbar disc degeneration as "mild," and an August 2007 MRI revealed mild to moderate spondylosis and moderate degenerative disc disease with minimal central disc bulging.  Another MRI in April 2009 revealed a "small" focal disc protrusion at T12-L1 and no evidence of disc protrusion or spinal stenosis at other lumbar levels; and an MRI in April 2010 revealed the same with respect to the lumbar spine and mild spondylosis in the cervical spine.  And physical examinations of Plaintiff consistently showed normal gait, full strength in her upper and lower extremities, and normal heel/toe walking.  On the other hand, although some of Dr. San Diego's examinations revealed range of motion within functional limits, many other examinations revealed severe tenderness to palpation, limited painful range of motion, and multiple trigger points of pain, which are symptomatic of fibromyalgia.

Furthermore, the ALJ found that Plaintiff's pain was treated with only conservative measures.  Yet, the evidence shows that Plaintiff had physical therapy, aquatherapy, and, by this Court's count, eleven courses of injections and/or blocks from May 2009 to December 2010, with only temporary pain relief.  The evidence further shows that Dr. San Diego's prescribed medications did not provide consistent pain relief, such that by early 2011, she was prescribing

morphine to treat Plaintiff's pain, with unsuccessful periodic attempts to taper her off the morphine.  Plaintiff subjectively reported ongoing and increased pain, and Dr. San Diego objectively found multiple trigger points of pain throughout 2011 and 2012.

Another *Goatcher* factor discussed and relied upon by the ALJ was that throughout the material time period, Plaintiff was working a part-time job.  Indeed, Plaintiff was working about fourteen hours a week as a clerk at a convenience store, and of particular note, she worked a nine-hour shift one day a week during this period.  The ALJ discussed this evidence and how it was unsupportive of and inconsistent with Plaintiff's testimony and Dr. San Diego's opinions.

But the ALJ did not mention the third-party statement of Plaintiff's employer, which was supportive of and consistent with Dr. San Diego's opinions.   Plaintiff's employer reported on June 2, 2011, that Plaintiff had "great difficulty" completing duties without physical limitation, becoming fatigued, or taking special accommodation or extra breaks.  The employer wrote that Plaintiff has had problems for the last two years lifting things over ten pounds and does not do any lifting or moving of items around the store.  The employer further wrote that he had to "cut her hours due to her difficulties in lifting and standing . . . from 20 hours to 13 hours."

To be sure, the ALJ is not required to discuss every piece of evidence so long as the record demonstrates that he considered all of the evidence.[23]  And the ALJ stated that he considered all of the evidence, as well as referenced a number of regulations and social security rulings germane to the proper analysis.[24]  But because the ALJ accorded no weight to the opinion

---

[23] *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

[24] *Flaherty v. Astrue.*, 515 F.3d 1067, 1071 (10th Cir. 2007) (finding that where the ALJ states that she has considered all the evidence, "our general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter") (internal quotation marks omitted) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

of the treating physician and concluded that Dr. San Diego's opinions were unsupported and inconsistent with other evidence in the record, this Court finds it incumbent on the ALJ to discuss evidence, such as the employer's statement, that was supportive of and consistent with Dr. San Diego's opinions. The employer indicated that Plaintiff could not perform the work even twenty hours a week and that he had cut her to thirteen hours a week, yet she still needed accommodations, including extra breaks, because of her fatigue and inability to stand. SSR 96-8 defines Residual functional capacity ("RFC") as "what an individual can still do despite his or her limitations" on a regular and continuing basis for 8 hours a day, 5 days a week.[25] Thus, the employer's report, and its consistency with the opinions of the treating physician, warranted discussion.

## VI. Conclusion

Finally, although the ALJ stated that he gave some weight to the opinions of the state agency consultant, Dr. Goering, the ALJ did not discuss why and to what effect. On remand, the ALJ must consider all the evidence supportive of the opinions of Dr. San Diego and Dr. Goering, explain what weight if any he gives to Dr. Goering's opinion and to what effect, and, if he accords less than controlling weight to Dr. San Diego, discuss what weight if any he gives to her opinions in light of the *Goatcher* factors, discussing in particular why he dismisses evidence that is supportive of and consistent with her opinions, such as the employer's third-party report. In assessing an RFC that is less than the opinion of Dr. Goering, that Plaintiff can do light exertional work, the ALJ explained that he was according credibility and weight to some of Plaintiff's statements and testimony. On remand, the ALJ should explain his credibility

---

[25]SSR 96-8, 1996 WL 374184 (July 2, 1996).

determinations with respect to Plaintiff's testimony and statements, since he is apparently according credibility to some of Plaintiff's statements but not to others.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated: November 12, 2014

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE